WILLIAM H. PERRY *vs.* THE MOUNT HOPE IRON COMPANY.

An offer made in Boston, Massachusetts, and to stand until the next day, was accepted by telegram from Providence, Rhode Island.   The receipt of the telegram was admitted.

*Held*, that the contract was completed in Rhode Island, though to be performed in Massachusetts.

A. sued B. for the price of scrap-iron which A. claimed that B. had purchased and refused to receive.   B. denied any negotiations for other than No. 1 iron, while the iron proffered was of inferior quality, such as witnesses testified was only purchased after inspection.

*Held*, that evidence as to the kind of iron used at B.'s works was improperly excluded when offered by the defendant at the jury trial.

EXCEPTIONS to the Court of Common Pleas.

*July* 24, 1886.   DURFEE, C. J.   This is an action to recover damages of the defendant corporation for refusing to receive a cargo of " bolt and nut scrap and boiler-plate " iron, so called, which the plaintiff claims the defendant agreed to buy at the rate

of $87\frac{1}{2}$ cents per hundred, delivered at its works in Somerset, Massachusetts. Upon trial in the Court of Common Pleas, the jury found a verdict for the plaintiff. The case is before us on the defendant's petition for a new trial for alleged misrulings, and on the ground that the verdict was against the evidence and the weight thereof. The plaintiff lives and does business in Providence. The defendant is a Massachusetts corporation, having its business establishment in Somerset, Massachusetts. Job M. Leonard is treasurer, and has an office in Boston. He makes purchases for the defendant. On the trial in the court below, the plaintiff put in testimony to show that his agent visited Leonard April 30, 1885, and informed him that the plaintiff had the "nut and bolt shop scrap," and solicited an offer for it; that Leonard offered $87\frac{1}{2}$ cents per hundred, delivered at the company's wharf, and the agent asked him to let the offer stand until the next day, which Leonard agreed to do; and that the next day the plaintiff telegraphed from Providence to Leonard in Boston, accepting the offer. The defendant did not admit that the offer was made as stated, and made the point that, if it was so made, the contract was not completed by the acceptance until the acceptance reached him in Boston, and that consequently the alleged contract was a Massachusetts contract, and, not being in writing, was invalid under the Massachusetts Statute of Frauds, which was put in proof. The court below ruled the point against the defendant, holding that the contract was completed in Rhode Island by sending the telegram. The defendant cites a few cases which support its position. *McCulloch* v. *Eagle Insurance Co.* 1 Pick. 278; *British and American Telegraph Co.* v. *Colson*, L. R. 6 Exch. 108; Langdell's Cases on Contracts, §§ 1–18; Langdell's Summary of Contracts, §§ 14–16. But the weight of authority strongly supports the instruction given by the court. 1 Addison on Contracts, *18, note 1, and cases there cited; *Maclay* v. *Harvey*, 32 Amer. Rep. note on p. 40. This note contains a full report of the recent English case, *Household Fire and Carriage Accident Insurance Co.* v. *Grant*, L. R. 4 Exch. Div. 216. The case was decided in the Court of Appeal July 1, 1879, by Thesiger and Bagallay, L. JJ., Bramwell, L. J., dissenting. Its doctrine is, that the contract is binding on the proposer as soon as a letter accepting the

proposal, properly directed to him, is posted by the recipient, whether it reaches the proposer or not, if posted without unreasonable delay, and the post is the ordinary and natural mode of transmitting the acceptance. In that case the letter did not reach the proposer, and Bramwell, L. J., who dissented, conceded that, " where a posted letter arrives, the contract is complete on posting." In the case at bar the arrival of the telegram is not disputed. We are of opinion that the contract, if made, was completed in Rhode Island and is a Rhode Island contract, notwithstanding it was to be performed in Massachusetts. *Hunt* v. *Jones,* 12 R. I. 265. If there be any question that the telegraph is a natural and ordinary mode of transmitting such an acceptance, that is a question of fact for the jury; but we are of opinion that, if it be shown that the acceptance duly reached the defendant, the question of the mode, no mode having been specified, is immaterial.

The other alleged misrulings were on the admission of evidence. Evidence was admitted to show that the plaintiff paid 80 cents per hundred for the " nut and bolt shop scrap " when he bought it. We think the evidence was irrelevant. The issue did not turn upon any question of price. The second alleged misruling was a refusal to admit testimony offered by the defendant to show that the scrap tendered by the plaintiff was not the kind of scrap which was adapted for use at the defendant's works. We think the testimony should have been admitted, for reasons which will be clearer after we have considered the second ground for a new trial.

The second ground is that the verdict was against the evidence and the weight thereof. The defendant denies ever making any offer as stated by the plaintiff. The offer, if made, was made to the plaintiff's agent, no one being present but the plaintiff's agent and Leonard. The agent testified as follows: " Saw Mr. Leonard in his office, and offered him some nut and bolt shop scrap. He asked me what I asked for it. I told him I wanted him to make me an offer, and he said he would give 85 cents a hundred for it. I told him that was too low, but that I could deliver it to his wharf by vessel, I thought. I asked him if he thought he could not give me any more. He said he could give me 87½ cents if I could deliver it at his wharf in Somerset, Massachusetts. I asked

him to let the offer stand until the next day. He said he would do so." Leonard testified that he had conversation only about " No. 1 iron," which was the kind used at the Somerset works; that he.told the plaintiff's agent that he must have it guaranteed No. 1, or must inspect it himself ; that the agent agreed to leave the matter open and give him an opportunity to see it, and that the iron tendered was not No. 1 iron. We think the testimony very clearly shows that it was not No. 1. The defendant adduced several dealers who testified that it was the custom to buy inferior scrap by inspection only, because some has more and some less skeleton or light iron, and it varies in value. Their testimony, taken in connection with the samples exhibited, seems to us very cogent. The plaintiff's agent alone testifies to the contrary of this. We do not think it probable, in view of this testimony, that Leonard would have made his offer at a venture, without seeing the scrap or a sample of it. The burden of proof is on the plaintiff. We incline to think that the verdict is against the weight of the evidence as the evidence stands. But this state of the proof makes apparent the value of the testimony ruled out; for it is improbable that Leonard would run the risk of buying, without inspection, scrap which was not adapted to use by the defendant, and therefore the testimony, if admitted, might have been all that was necessary to lead the jury to render a verdict for the defendant.                                    *Exceptions sustained.*

*Lemuel H. Foster,* for plaintiff.

*Augustus S. Miller & Arthur L. Brown,* for defendant.